UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SHARP CORPORATION**<br>1 Takumi-cho, Sakai-ku, Sakai City,<br>Osaka 590-8522 Japan<br><br>**and**<br><br>**SHARP ELECTRONICS CORPORATION,**<br>100 Paragon Drive<br>Montvale, New Jersey 07645<br><br>    **Plaintiffs**<br><br>v.<br><br>**HISENSE USA CORPORATION**<br>7310 McGinnis Ferry Road<br>Suwanee, Georgia 30024<br><br>**and**<br><br>**HISENSE INTERNATIONAL (HONG KONG) AMERICA INVESTMENT CO. LTD.**<br>Room 3101-05,<br>Singga Commercial Centre, No. 148<br>Connaught Road West,<br>Hong Kong, China.<br><br>    **Defendants.** | **COMPLAINT**<br><br>Case No. _____ |

      Plaintiffs Sharp Corporation and Sharp Electronics Corporation (collectively, "Sharp"), by and through their undersigned counsel, file this Complaint against Defendants Hisense USA Corporation ("Hisense USA") and Hisense International (Hong Kong) America Investment Co. Ltd. ("Hisense International") (collectively, "Hisense"), making the following allegations based

on personal knowledge and upon information and belief.

## NATURE OF THE ACTION

1.      This case involves a request for declaratory and injunctive relief regarding the enforceability of a Gag Order issued in a private arbitration before the Singapore International Arbitration Centre.

2.      Sharp seeks a declaration from the Court (1) confirming Sharp's First Amendment rights against prior restraints and to petition the Government, and (2) enjoining any efforts by Hisense to enforce the Gag Order in the United States.

3.      Sharp and Hisense are engaged in an arbitration pending with the Singapore International Arbitration Centre.

4.      The arbitrator has issued a Gag Order prohibiting only Sharp—and not Hisense—from making statements about the dispute or petitioning "regulatory authorities, except as required by law," regarding issues relating to the dispute, ███████████████████████ ███████████████████████.

5.      The Gag Order is contrary to the public policy of the United States embodied in the First Amendment of the Constitution, including: (1) the public policy that prohibits a prior restraint on speech absent extraordinary circumstances, and (2) the public policy that favors the right to petition the Government.

6.      Sharp seeks an order declaring that the Gag Order against Sharp is not recognizable or enforceable in the United States.

## PARTIES

7.      Plaintiff Sharp Corporation is incorporated and existing under the laws of Japan with a principal place of business at 1 Takumi-cho, Sakai-ku, Sakai City, Osaka 590-8522 Japan.

8. Plaintiff Sharp Electronics Corporation is a New York corporation with a principal place of business at 100 Paragon Drive, Montvale, New Jersey 07645.

9. Defendant Hisense USA Corporation is a Georgia corporation with a principal place of business at 7310 McGinnis Ferry Road, Suwanee, Georgia 30024.

10. Defendant Hisense International (Hong Kong) America Investment Co. Ltd. is incorporated under the laws of the People's Republic of China with a principal place of business at Room 3101-05, Singga Commercial Centre, No. 148 Connaught Road West, Hong Kong, China. Hisense International is affiliated with Hisense Co., Ltd., which is wholly-owned by a political subdivision of the Chinese government.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under: (1) 28 U.S.C. § 1331 because there is a federal question regarding the enforceability of the Gag Order under the First Amendment to the Constitution; (2) 28 U.S.C. §§ 2201-02 because Plaintiff seeks a declaratory judgment and injunctive relief; (3) 28 U.S.C. § 1332 because this is a dispute between citizens of different states and in which citizens of a foreign state are additional parties, and the amount in controversy—the value of Sharp's First Amendment rights that are restricted, and the resulting damage therefrom—exceeds the sum or value of $75,000; and (4) 9 U.S.C. § 203 because this action arises under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), which is codified in the Federal Arbitration Act at 9 U.S.C. §§ 201-208.

12. On information and belief, Hisense USA and Hisense International are subject to personal jurisdiction in this District because they both conduct and do business within the United States and this District. Hisense International executed a License Agreement that provided an

exclusive license to Hisense International to use Sharp's trademarks to manufacture, assemble, promote, market, distribute, and sell products in North America. Hisense International states that it is recognized as a "world leading provider" of televisions, and "its products are sold in over 130 countries and regions throughout the world." http://www.hisense.co.za/about-hisense. Hisense International "serves customers worldwide."

https://www.bloomberg.com/profiles/companies/HISENZ:HK-hisense-international-hong-kong-co-ltd.

13. Hisense USA specifically states on its own website the following: "All across North America, we manufacture and distribute televisions, refrigerators, air conditioners, dehumidifiers, beverage coolers and freezers." https://www.hisense-usa.com/our-company. Similarly, on information and belief, both Hisense International and Hisense USA directly or through intermediaries (including distributors, retailers, and others) ship, distribute, offer for sale, sell, and advertise products in this District, including on their nationally accessible websites and in retail stores in this District.

14. Additionally, on information and belief, consumers from anywhere in the country, including this District, can purchase Hisense products by clicking on an external link from Hisense's nationally accessible websites. On information and belief, Hisense International and Hisense USA have purposefully availed themselves of the privileges of conducting business in the United States, and more specifically in this District. Thus, the court has personal jurisdiction over both parties.

15. Venue lies in this district under 28 U.S.C. § 1391 and 9 U.S.C. § 204 because Defendant Hisense International does not reside in the United States and both Defendants are subject to the court's personal jurisdiction with respect to this action. There is no other judicial

district in which a substantial part of the events giving rise to the claim occurred. The Federal Communications Commission headquarters is also located at 445 12th Street, SW, Washington, DC 20554. The Gag Order at issue precludes Sharp from communicating with this Washington-based agency, as well as other relevant federal agencies such as the Federal Trade Commission ("FTC") and members of Congress involved in oversight of these issues.

**FACTUAL ALLEGATIONS**

**I.     THE PARTIES**

16.     Sharp is a well-recognized, trusted electronics brand, and a world-renowned television manufacturer.

17.     Sharp is famous for its innovation in LCD televisions, having developed a four color display (red, green, blue, yellow) trademarked QUATTRON, and a higher end series of televisions with the brand name AQUOS, that have been sold around the world for many years.

18.     The Sharp brand name and trademark is instantly recognizable to consumers everywhere, and connotes to them dependability, innovation and other positive qualities.

19.     Hisense is a Chinese company that is relatively unknown in the United States.

20.     Hisense began selling televisions in the United States very recently and communicates on its website to consumers: "[D]on't feel bad if you haven't heard of us. We're new here." https://www.hisense-usa.com/our-company.

21.     In 2015, Sharp restructured its television operations to adjust to an increasing competitive environment in the flat screen television industry.

22.     In doing so, Sharp decided to sell a production factory in Mexico to Hisense.

23.     Sharp agreed to include a limited license to the Sharp trademarks in the purchase price of the factory.

## II. THE LICENSE AGREEMENT

24. Sharp and Hisense are parties to a License Agreement dated July 31, 2015 (the "License Agreement").

■ █████████████████████████████████████████
███████████

■ █████████████████████████████████████████
███████████████████████████████████

■ █████████████████████████████████████████
█████████████████████████████████████████
███████████

■ █████████████████████████████████████████
█████████████████████████████████

■ █████████████████████████████████

29. Hisense began selling Sharp-branded televisions in the United States in January 2016.

■ █████████████████████████████████████████
█████████████████████████████

■ █████████████████████████████████████████
█████████████████████████████████████████
███████████████████████

■ █████████████████████████████████████████
█████████████████████████████████████████
███████████████████████████

6

■ ███████████████████████████████████████████
███████████████████████████████████████████
████████████████████

■ ███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████

■ ███████████████████████████████████████████
███████████████████████████████████████████
████████████████████

■ ███████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████

■ ███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████
████████████████████

■ ███████████████████████████████████████████
■ ███████████████████████████████████████████
████

■ ███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████

## IV. THE INTERNATIONAL ARBITRATION

40. On April 24, 2017, Hisense filed a notice of arbitration and sought emergency interim relief to prevent Sharp from terminating the License Agreement.

■ ███████████████████████████████████████

██  ████████████████████████████████████████████████████████

████████████████

██  ████████████████████████████████████████████████████████

████████████████

44. On May 9, 2017, the emergency arbitrator issued an "emergency" interim award (the "Gag Order").

45. A true and correct copy of the Gag Order is attached as Exhibit 1 and has been filed under seal.

██  ████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

47. Paragraph 135(iii) of the Gag Order states as follows:

> [Sharp] shall refrain from, directly or indirectly through its affiliates, disparaging [Hisense] and/or disrupting its business, including by making public statements or press releases about this arbitration and/or the dispute between [Hisense] and [Sharp,] or approaching [Hisense's] business associates and/or other third parties (including, but not limited to, [Hisense's] customers, suppliers, content and service providers, and/or regulatory authorities, except as required by law), in respect of any matters that are to be addressed in arbitration under the [License Agreement].

██  ████████████████████████████████████████████████████████

████████████████████████████████████████████████

49. Sharp objected to the issuance of the Gag Order.

50. Sharp wishes to communicate with regulatory agencies and other business entities about ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

51. In addition, the Gag Order is so broad that Sharp fears it may be at risk of violating its terms when it speaks to consumers, retailers, and media organizations about ████████████████████████████████████████████████████████████████████████████ in conjunction with the recently announced plans by major investor Foxconn to open up a $10 billion LCD display screen plant in the United States.

## V. PRIOR RESTRAINTS ARE DISFAVORED UNDER THE FIRST AMENDMENT

52. The term "prior restraint" is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur.

53. Gag orders are generally considered impermissible prior restraints on free speech.

54. The First Amendment provides greater protection from prior restraints than from subsequent punishments.

55. For this reason, there is a heavy presumption against the constitutional validity of a prior restraint.

56. The Supreme Court has held that the Government must show the most compelling reasons for any prior restraint on speech.

## VI. THE GAG ORDER VIOLATES FIRST AMENDMENT PROTECTIONS AGAINST PRIOR RESTRAINTS OF SPEECH AND TO PETITION THE GOVERNMENT

57. Sharp has First Amendment rights to free speech and to petition the Government.

58. Sharp wishes to make statements regarding ███████████████ ██████████████████████████████████████████████████████ ██████.

59. Sharp also wishes to make statements to consumers, retailers, media organizations, and others about these same issues as well as its own plans for innovation in the high end television market.

60. The Gag Order attempts to infringe on Sharp's First Amendment rights to do so.

61. The arbitrator's only stated basis for the Gag Order is that if Sharp says anything ██████████████████████████████████████████████████████ ████████████████.

62. In the United States, companies have a First Amendment right to engage in robust commercial speech and to ████████████████████████████████████ █████.

63. Sharp never agreed to arbitrate its First Amendment rights.

64. The arbitrator's Gag Order is not supported by a compelling interest as required by the First Amendment.

## VII. THE GAG ORDER IS CONTRADICTORY TO U.S. PUBLIC POLICY AND SHOULD NOT BE RECOGNIZED OR ENFORCED

65. A copy of a communication that Sharp wishes to make to the FCC is attached as Exhibit 2 and has been filed under seal.

66. ████████████████████████████████████████

67. If Sharp is prohibited from communicating with the government and the public ███████████████████████████████████████████████, Sharp's First Amendment

rights will be infringed and Sharp's reputation will suffer █████████████████

████████████████████████████████████████.

### VIII. SHARP DOES NOT SEEK TO LITIGATE ISSUES SUBJECT TO ARBITRATION



██ ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.

██ ████████████████████████████.

70. Sharp does not seek to litigate those issues here.

71. Sharp only seeks an order permitting Sharp to ████████████████

████████████████████████████.

### CAUSES OF ACTION

#### COUNT I
#### (Declaratory Judgment Under 28 U.S.C. § 2201 et seq.)

72. Sharp re-alleges and incorporates by reference the allegations contained in all of the preceding paragraphs.

73. An actual controversy exists as to whether the Gag Order is enforceable in the United States.

74. A declaration is necessary and appropriate at this time to affirm that any communications between Sharp with the government, courts, public, or media are permitted.

75. Accordingly, Sharp seeks, pursuant to 28 U.S.C. §§ 2201 and 2202, a judgment from this Court declaring: (a) that Paragraph 135(iii) of the Gag Order is unenforceable as a matter of law because it violates public policy; and (b) the Gag Order cannot preclude Plaintiffs from exercising their First Amendment rights to petition the Government ████████████ ████████████████████████ and to communicate with, and respond to legitimate

11

questions from, consumers, retailers, trade groups and associations, media organizations, and others ███████████████████████████████████████████████████

## COUNT II
### (Injunctive Relief under 28 U.S.C. § 2202)

76. Sharp re-alleges and incorporates by reference the allegations contained in all of the preceding paragraphs.

77. The Gag Order's prior restraint on Sharp's First Amendment rights damages Sharp's ability to convey ██████████████████████████████████████████ ███████

78. The Gag Order's prior restraint on Sharp's First Amendment rights ██████ ████████████████████████████████████████████████████████ ████████████████████████

79. Sharp has demonstrated a likelihood of success on the merits and irreparable injury to its First Amendment rights, and both a balancing of the equities and the public interest favor the issuance of an injunction against Hisense.

80. Sharp requests that the Court enjoin Hisense from taking any action to enforce the Gag Order in the United States to prevent or to prohibit Sharp from exercising its First Amendment rights.

## COUNT III
### (Request to Refuse Recognition and Enforcement Under New York Convention, 9 U.S.C. §§ 201-208)

81. Sharp re-alleges and incorporates by reference the allegations contained in all of the preceding paragraphs.

82. The United States is a party to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, also known as the New York Convention.

83. The New York Convention is codified at chapter two of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208.

84. The New York Convention requires courts of contracting states to give effect to private agreements to arbitrate and to recognize and enforce arbitration awards made in other contracting states.

85. Under the New York Convention, recognition and enforcement of an arbitral award may be refused if the Court finds that recognition or enforcement "would be contrary to the public policy of that country."

86. Courts do not, and are not required to, recognize or enforce foreign orders that are contrary to the public policy of the United States.

87. The Gag Order is contrary to the public policy of the United States embodied in the First Amendment of the Constitution, including the public policy that prohibits a prior restraint on speech absent extraordinary circumstances, and the public policy that favors the right of American citizens to petition their Government.

88. Sharp seeks an order declaring that the Gag Order on the parties is not recognizable or enforceable in the United States.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Enter judgment declaring: (a) that Paragraph 135(iii) of the Gag Order is unenforceable because it violates public policy; (b) the Gag Order does not preclude Plaintiffs from exercising their First Amendment rights to petition the Government ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and to communicate with, and respond to legitimate questions from, consumers,

13

        retailers, trade groups and associations, media organizations, and others ■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■;

        and

B.    Provide for preliminary and permanent injunctive relief prohibiting Defendants from enforcing the Gag Order in the United States; and

C.    Grant Plaintiffs such other relief as the Court deems just and proper.

Respectfully submitted,

Dated: August 15, 2017                              /s/ Randall K. Miller

Randall K. Miller (D.C. Bar No. 460682)
Nicholas M. DePalma (D.C. Bar No. 974664)
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, D.C. 20001
(703) 905-1449
rkmiller@venable.com
nmdepalma@venable.com

*Counsel for Plaintiffs Sharp Corporation and Sharp Electronics Corporation*