# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SHARP CORPORATION; SHARP ELECTRONICS CORPORATION, | ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 1:17-cv-01648-JEB |
| v. | ) ) | |
| HISENSE USA CORPORATION; HISENSE INTERNATIONAL (HONG KONG) AMERICA INVESTMENT CO., LTD., | ) ) ) | |
| Defendants. | ) ) ) ) ) | |
| | ) | |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, STAY THE ACTION

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ...................................................................................................................1

ARGUMENT ..........................................................................................................................3

I.      THIS COURT LACKS SUBJECT MATTER JURISDICTION .......................................3

        A.      Plaintiffs' Complaint, in Substance, Seeks to Vacate or Annul Material Terms
                of the Emergency Order and Is Therefore Barred ....................................................3

        B.      The New York Convention Does Not Recognize a Cause of Action to "Refuse
                Enforcement" of an Award .......................................................................................5

II.     THE COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANTS .......9

        A.      Plaintiffs Failed to Establish Specific Jurisdiction .................................................9

        B.      Hisense International Can Assert a Personal Jurisdiction Defense .......................11

III.    THE COMPLAINT IS LEGALLY DEFICIENT...........................................................12

        A.      Plaintiffs' Request to Vacate the Emergency Order Is Time Barred....................12

        B.      Plaintiffs Have Not Alleged a Cognizable First Amendment Claim to Support
                a Public Policy Challenge to the Emergency Order Under the New York
                Convention.............................................................................................................13

        C.      Plaintiffs Fail to State a Claim against Hisense USA ...........................................17

IV.     ALTERNATIVELY, THIS COURT SHOULD STAY THE PROCEEDINGS IN
        FAVOR OF THE APPLICATION TO VACATE FILED WITH THE ARBITRAL
        TRIBUNAL .............................................................................................................18

CONCLUSION.....................................................................................................................18

AMERICAS 93666700

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alkanani v. Aegis Def. Servs., LLC,*
  976 F. Supp. 2d 13 (D.D.C. 2014) .....................................................................................10

*Am Optical Co. v. Curtiss,*
  59 F.R.D. 644 (S.D.N.Y. 1973) ..........................................................................................17

*Belize Soc. Dev. Ltd. v. Gov't of Belize,*
  5 F. Supp. 3d 25 (D.D.C. 2013) ......................................................................................7, 13

*Blum v. Yaretsky,*
  457 U.S. 991 (1982).............................................................................................................14

*Bristol-Myers Squibb Co. v. Superior Court,*
  137 S. Ct. 1773 (2017)..........................................................................................................9

*Charlton v. Mond,*
  987 A.2d 436 (D.C. 2010) ...................................................................................................17

*Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp.,* 35
  A.3d 1127 (D.C. Cir. 2012) ................................................................................................10

*Coutinho Caro & Co. U.S.A., Inc. v. Marcus Trading, Inc.,*
  2000 U.S. Dist. LEXIS 8498 (D. Conn. Mar. 14, 2000)......................................................6

*Cvoro v. Carnival Corp.,*
  234 F. Supp. 3d 1220 (S.D. Fla. 2017) ................................................................................7

*Davis v. Prudential Sec., Inc.,*
  59 F.3d 1186 (11th Cir. 1995) ............................................................................................14

*Dole Food Co. v. Patrickson,*
  538 U.S. 468 (2003)..............................................................................................................11

*Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.,*
  355 A.2d 808 (D.C. 1976) (en banc) ..................................................................................10

*Essex Ins. Co. v. Kasten Railcar Servs, Inc.,*
  129 F.3d 947 (7th Cir. 1997) ..............................................................................................17

*Everett v. Paul Davis Restoration, Inc.,*
  771 F.3d 380 (7th Cir. 2014) ..............................................................................................14

AMERICAS 93666700

## <u>TABLE OF AUTHORITIES</u>

*Gemini Consulting Grp. Inc. v. Horan Keogan Ryan Ltd.*,
   2007 U.S. Dist. LEXIS 39509 (N.D. Ill. May 30, 2007) ........................................................4

*Gonsalvez v. Celebrity Cruises, Inc.*,
   935 F. Supp. 2d 1325 (S.D. Fla. 2013) ...................................................................................12

*Gulf Petro Trading Co. v. Nigerian Nat'l Petroleum Corp.*,
   512 F.3d 742 (5th Cir. 2008) ............................................................................................4, 8

*Guttenberg v. Emery*,
   41 F. Supp. 3d 61, 68 (D.D.C. 2014) ......................................................................................17

*Hulley Enters. Ltd. v. Russian Fed'n*,
   211 F. Supp. 3d 269, 282 .........................................................................................................6

*Ingaseosas Int'l Co. v. Aconcagua Investing Ltd.*,
   2011 U.S. Dist. LEXIS 13064 (S.D. Fla. Feb. 10, 2011) ........................................................6

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
   335 F.3d 357 (5th Cir. 2003) ...................................................................................................8

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. Yll Irrevocable Tr.*, 863 F. Supp. 2d
   351 (S.D.N.Y. 2012) ................................................................................................................5

*Livnat v. Palestinian Auth.*,
   851 F.3d 45 (D.C. Cir. 2017) ................................................................................................11

*P.M.I. Trading Ltd. v. Farstad Oil, Inc.*,
   2001 U.S. Dist. LEXIS 227 (S.D.N.Y. Jan. 16, 2001) ..........................................................12

*Price v. Socialist People's Libyan Arab Jamahiriya*,
   294 F.3d 82 (D.C. Cir. 2002) ................................................................................................11

*RFF Family P'ship, LP v. Link Dev., LLC*,
   940 F. Supp. 2d 131 (D. Mass. 2012) ...................................................................................17

*Shelly v. Kraemer*,
   334 U.S. 1 (1948) ...................................................................................................................14

*Stedman v. Great Am. Ins. Co.*,
   2007 WL 1040367 (D.N.D. Apr. 3, 2007) ..............................................................................5

*Tesoro Petroleum Corp. v. Asamera (South Sumatra), Ltd.*,
   798 F. Supp. 400 (W.D. Tex. 1992) ........................................................................................6

AMERICAS 93666700

## TABLE OF AUTHORITIES

*United States v. Am. Soc'y of Composers, Authors and Publishers*,
708 F. Supp. 95 (S.D.N.Y. 1989) ............................................................................14

*United States v. Wiseman*,
445 F.2d 792, 795 n.3 (2d Cir. 1971)......................................................................14

*Ziad Sakr Fakhri v. Marriot Int'l Hotels, Inc.*,
201 F. Supp. 3d 696 (D. Md. 2016) ...........................................................................4

## STATUTES AND RULES

28 U.S.C. § 1603.............................................................................................................11

9 U.S.C. § 12..................................................................................................................12

## MISCELLANEOUS

Alan Scott Rau, *Understanding (and Misunderstanding) "Primary Jurisdiction,"*
21 Am. Rev. Int'l Arb. 47, 176 (2010) .....................................................................7

Gary B. Born, *International Arbitration: Law and Practice*, "Annulment of
International Arbitration Awards" (Kluwer Law, 2015) ...........................................6

Restatement 3d., *The U.S. Law of Int'l Commercial Arbitration* .....................................7

W. Michael Resiman, *Systems of Control in International Adjudication &
Arbitration*, Duke University Press Books (1992)....................................................8

AMERICAS 93666700

## INTRODUCTION

This lawsuit is part of Sharp's campaign to achieve its publicly stated goal of taking back the Sharp brand by undoing its Trademark License Agreement ("TLA") with Hisense International. Sharp's efforts to terminate the TLA based on manufactured grounds are currently subject to a pending arbitration in Singapore. Sharp nonetheless initiated a wave of collateral litigation in U.S. courts against Hisense International and related entities under the guise of consumer protection claims. In this action, Sharp seeks another end-run around the arbitration on the pretext of free speech. This is just another tactical maneuver to pressure Hisense to give up the Sharp brand. As set out in Defendants' Motion to Dismiss ("MTD"), this action suffers from a number of infirmities that warrant dismissal.

As a threshold matter, this Court lacks subject matter jurisdiction because it is in a secondary jurisdiction and thus not the proper forum under the New York Convention for Plaintiffs' application to overturn or modify the Emergency Order. Seeking to avoid this jurisdictional bar, Plaintiffs argue that their petition to have the Emergency Order declared "unenforceable" is somehow different than a petition to vacate or modify the order. Regardless of how Plaintiffs characterize their requested relief, the purpose and effect of Plaintiffs' action is to overturn material parts of the Emergency Order. The law is clear: a court of secondary jurisdiction cannot entertain a petition to vacate or modify an arbitral award (or any portions thereof), and this Court therefore lacks jurisdiction with regard to Plaintiffs' affirmative claims seeking to overturn or set aside as "unenforceable" certain portions of the Emergency Order. Plaintiffs are not without remedy, and Sharp is currently challenging the Emergency Order before the SIAC arbitral tribunal.

This Court also lacks personal jurisdiction over Defendants. Plaintiffs' arguments and

1

declarations do nothing more than support the unremarkable fact that Hisense and Sharp-branded televisions are sold in the District and that the FCC is based in the District. Plaintiffs fail to demonstrate the requisite nexus between Plaintiffs' claims and Defendants' alleged contacts with the District. The dispute at issue involves a challenge to an Emergency Order issued by a foreign arbitral tribunal, and generic allegations that Hisense entities may sell goods here or are subject to regulation by an administrative agency located here are not sufficient to establish jurisdiction, particularly under recent Supreme Court precedent.

Plaintiffs also do not state a cognizable claim. <u>First</u>, Plaintiffs' petition is time barred by the applicable three-month statute of limitations under the New York Convention regardless of how Plaintiffs may characterize their claims. <u>Second</u>, Plaintiffs have not—and cannot—establish a violation of the First Amendment because there is no state action. Nor is there any other public policy basis to overturn the Emergency Order, particularly where the relevant non-disparagement provision in the order was included by the arbitrator to prevent Sharp from sabotaging the underlying commercial agreement at issue in a pending arbitration. <u>Third</u>, Plaintiffs have not stated a claim against Hisense USA. Hisense USA is not a party to the Emergency Order at issue in this action, and cannot be named as a defendant merely because it may be a sublicensee under the TLA or has some tangential interest in the dispute.

For all of the foregoing reasons, the Court should dismiss this action in its entirety and with prejudice. In the alternative, this action should be stayed pending a decision on Sharp's Application to Vacate the Emergency Order that Plaintiffs acknowledge will be heard in less than two months and decided shortly thereafter.

AMERICAS 93666700

**ARGUMENT**

## I.    THIS COURT LACKS SUBJECT MATTER JURISDICTION

Because Plaintiffs proactively seek a declaration vacating terms of the Emergency

Order—in substance, seeking to void, annul, or modify material parts of the Emergency Order—

this Court, which sits in secondary jurisdiction, lacks subject matter jurisdiction.  MTD at 9-12.

That should be the end of this matter.

Plaintiffs do not dispute that the New York Convention applies to this action, that the

Convention recognizes courts of primary or secondary jurisdiction, and that this Court sits in

secondary jurisdiction.  Pls.' Resp. at 9-10.  Nor do Plaintiffs dispute that courts of primary

jurisdiction have *exclusive* authority to set aside, annul, vacate, or modify an arbitration award.

Pls.' Resp. at 10.  Instead, Plaintiffs argue that their Complaint is not a "petition to vacate,"

which they acknowledge would be barred, but rather an action to "prevent enforcement" via a

declaration that the order is "unenforceable."  Pls.' Resp. at 11.  Plaintiffs' word-play does not

change what this case really is and does not create subject matter jurisdiction for this Court.

### A.    Plaintiffs' Complaint, in Substance, Seeks to Vacate or Annul Material Terms of the Emergency Order and Is Therefore Barred

Under the New York Convention, because this Court sits in secondary jurisdiction (which

is undisputed), its authority is limited to granting or denying an application to enforce a foreign

arbitral award.  Hisense has not filed any proceeding seeking to enforce the Emergency Order.

Plaintiffs nonetheless pre-emptively filed this action seeking a declaration that Paragraph 135(iii)

of the Emergency Order is "unenforceable."  Compl., Request for Relief, ¶ A.  Regardless of

how Plaintiffs seek to frame the relief sought in the Complaint, in substance, Plaintiffs' action

seeks to vacate, annul, or modify material terms of the Emergency Order, which is not permitted

in this Court sitting in secondary jurisdiction under the New York Convention.  MTD at 9-12.

3

Plaintiffs unsuccessfully attempt to distinguish *Gemini Consulting Group Inc. v. Horan Keogan Ryan Ltd.*, 2007 U.S. Dist. LEXIS 39509 (N.D. Ill. May 30, 2007), which is directly on point.  Pls.' Resp. at 12-14.  In *Gemini*, the court rejected a similar attempt to set aside an arbitral order under the guise of a declaration of unenforceability.  2007 U.S. Dist. LEXIS 39509, at *12 ("Gemini is the plaintiff, and the complaint specifically seeks a form of relief—'a declaration that the Awards issued by the arbitrator are invalid and not enforceable against Gemini.'  The Convention does not empower us to enter such an order, which would be akin to setting aside or vacating the awards.").  Plaintiffs argue this action is different from *Gemini* because they are only seeking a determination regarding enforceability, which Plaintiffs contend the *Gemini* court recognized was available in a court with secondary jurisdiction.  Pls.' Resp. at 13.  Plaintiffs are wrong.  The *Gemini* court expressly rejected the plaintiff's attempt to pre-emptively obtain a declaration that the arbitration award was "unenforceable," which is exactly what Plaintiffs seek here.[1]

This Court should not allow Plaintiffs to elevate form over substance to circumvent the well-established jurisdictional regime for challenging foreign arbitration awards.  *See also Gulf Petro Trading Co. v. Nigerian Nat'l Petroleum Corp.*, 512 F.3d 742, 753 (5th Cir. 2008) (finding that a complaint cloaked in a variety of federal and state law claims amounted to no more than an improper collateral attack seeking to vacate a final arbitral award); *Ziad Sakr Fakhri v. Marriot Int'l Hotels, Inc.*, 201 F. Supp. 3d 696, 711-712 (D. Md. 2016) ("[A] court in secondary

---

[1] Plaintiffs also ignore that, after dismissing the plaintiff's pre-emptive declaratory action challenging the enforceability of the award, the *Gemini* court reviewed the winning parties' separately-filed petition to confirm the award and considered arguments that it was unenforceable only in the context of opposing that petition—consistent with the primary-secondary jurisdiction dichotomy established by the New York Convention.  2007 U.S. Dist. LEXIS 39509, at *15-25.

AMERICAS 93666700

jurisdiction also lacks subject matter jurisdiction over a suit that seeks [to] vacate, set aside, or modify a foreign award through claims that are merely dressed up to appear independent of the award."); *Stedman v. Great Am. Ins. Co.*, 2007 WL 1040367 (D.N.D. Apr. 3, 2007) ("The [defendants] contend that by calling the motion to vacate a petition to confirm, [plaintiff] is simply changing the characterization . . . and asking the [c]ourt to honor form over substance. The [c]ourt agrees that [plaintiff]'s petition to confirm requests the same action as the motion to vacate.").[2]

**B.      The New York Convention Does Not Recognize a Cause of Action to "Refuse Enforcement" of an Award**

Contrary to Plaintiffs' contention that they seek relief "expressly contemplated by the Convention," (Pls.' Resp. at 2, 14-15), the New York Convention does not recognize an affirmative cause of action to "refuse enforcement" of an arbitral award on public policy grounds.

The New York Convention provides in relevant part:

> Recognition and enforcement of the arbitral award may also be refused if the competent authority in the country *where recognition and enforcement is sought* finds that: . . . (b) the recognition or enforcement of the award would be contrary to the public policy of that country.

---

[2] Plaintiffs' attempt to distinguish *Stedman* misses the point. Pls.' Resp. at 14. *Stedman* illustrates that a court should focus on substance over form. In *Stedman*, the plaintiff sought to vacate a portion of an award under the guise of a "petition to confirm." Despite characterizing the action as a petition to confirm, the court recognized that the action in substance sought to vacate portions of the award and dismissed the action as time-barred. Similarly, Plaintiffs try to distinguish *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. Yll Irrevocable Tr.*, 863 F. Supp. 2d 351, 356 (S.D.N.Y. 2012) because the plaintiff in that action sought a declaration the arbitral award was "void" while Plaintiffs here seek a declaration the Emergency Order is "unenforceable." Pls.' Resp. at 14-15. This is specious. There is no effective difference between a declaration that an award is "void" and a declaration that an award is "unenforceable." In either circumstance, the effect of the declaration would be to set aside and vacate the award, which is not something a court sitting in secondary jurisdiction has the authority to do under the New York Convention.

5

New York Convention, Art. V(2)(b) (emphasis added).  Thus, the express statutory language of

the Convention requires that recognition and enforcement be sought before a court can determine

whether or not recognition or enforcement of a foreign arbitral award would be contrary to U.S.

public policy.  In other words, public policy arguments are to be presented defensively, *if and

only when* a recognition and enforcement action is filed.  *Ingaseosas Int'l Co. v. Aconcagua

Investing Ltd.*, 2011 U.S. Dist. LEXIS 13064, at *10 (S.D. Fla. Feb. 10, 2011) (stating that the

"plain text of the Convention[] and case law . . . overwhelmingly confirms that the Convention

provides for causes of action only for recognition and enforcement of arbitral awards");

*Coutinho Caro & Co. U.S.A., Inc. v. Marcus Trading, Inc.*, 2000 U.S. Dist. LEXIS 8498, at *20

(D. Conn. Mar. 14, 2000) ("Pursuant to Article V of the Convention, this court may hear

objections *raised in opposition* to a petition to confirm an award") (emphasis added); *Tesoro

Petroleum Corp. v. Asamera (South Sumatra), Ltd.*, 798 F. Supp. 400, 404-05 (W.D. Tex. 1992)

(noting that Article V of the New York Convention "sets forth the specific, limited

circumstances in which, *in a suit to enforce an award*, a court may decline to do so.") (emphasis

added).[3]

Leading commentators, including those relied upon by Plaintiffs, confirm this is the law.

*See* Gary B. Born, *International Arbitration: Law and Practice*, "Annulment of International

Arbitration Awards" (Kluwer Law, 2015) at Ch. 16.02 [A] ("[T]he Convention's language and

structure clearly impose such limits, requiring that actions to annul a Convention award be

---

[3] *Hulley Enters. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 282 n.9 (D.D.C. 2016), relied on by
Plaintiffs, *see* Pls.' Resp. at 2, 10-11, further supports Defendants' position.  The *Hulley* court
did not, as Plaintiffs imply, authorize a pre-emptive vacatur action in a secondary-jurisdiction
court.  The plaintiff in *Hulley* initiated the action as a petition to confirm, *see* 1:14-cv-1996, Dkt
No. 1, and arguments against enforceability were set forth merely as defenses—as the New York
Convention envisions.

pursued *exclusively* in the place where the award was made.") (emphasis added); Restatement 3d., *The U.S. Law of Int'l Commercial Arbitration* ("[T]he competent authority at the seat of arbitration has exclusive power to vacate awards rendered there."); Alan Scott Rau, *Understanding (and Misunderstanding) "Primary Jurisdiction,"* 21 Am. Rev. Int'l Arb. 47, 176 (2010) ("A U.S. court 'sitting in secondary jurisdiction' 'accordingly' lack[s] jurisdiction 'over claims seeking to vacate' a foreign arbitral award; 'under the framework of the New York Convention, the proper method of obtaining this relief is by moving to set aside or modify the award in a court of primary jurisdiction.'").

Plaintiffs' reliance on *Cvoro v. Carnival Corp.*, 234 F. Supp. 3d 1220 (S.D. Fla. 2017) is misplaced. The court exercised subject matter jurisdiction in order to permit the plaintiff in that case to pursue a federal statutory claim under the Jones Act and raise whether the arbitration clause in question effected a prospective waiver of such statutory claims—claims and arguments which are not at issue here and otherwise inapplicable. Ultimately, *Cvoro* was incorrectly decided, considering the court did not cite or rely on any relevant precedents, did not analyze the New York Convention's relevant language, and even held that vacatur actions are proper under the New York Convention in a secondary-jurisdiction court, which even Plaintiffs acknowledge is not the law. Pls.' Resp. at 2 n.3, 10.[4]

Nor is there any merit to Plaintiffs' suggestion that somehow this Court has jurisdiction

---

[4] Plaintiffs also misconstrue *Belize Social Dev. Ltd. v. Gov't of Belize*, 5 F. Supp. 3d 25 (D.D.C. 2013), suggesting that a U.S. court sitting in secondary jurisdiction determined that an arbitration award was unenforceable by way of declaratory relief. *See* Pls.' Resp. at 13-14. However, the unspecified declaratory relief referenced in that case was issued by a Belize court, not a U.S. court. *Belize Soc. Dev. Ltd.*, 5 F. Supp. 3d at 31. Furthermore, the plaintiff in *Belize* filed a petition to confirm a foreign award, and thus the case reinforces the limited role of secondary-jurisdiction courts and further illustrates that arguments against enforceability are to be asserted as a shield (*i.e.*, in defense of a petition to confirm), not a sword. *Id.* at 42-43.

AMERICAS 93666700

because Plaintiffs "merely seek[ ] a declaration that the award will not be enforced within the United States." Pls.' Resp. at 13. Any action seeking to modify an arbitral award can only be brought in a primary jurisdiction, regardless of the geographic scope of the modification sought. Furthermore, such a result would undermine the efficiency and finality of arbitration. It would allow a losing party to bring piecemeal attacks challenging portions of awards in various jurisdictions of their choosing. *See* W. Michael Resiman, *Systems of Control in International Adjudication & Arbitration*, Duke University Press Books (1992) at 117 ("If any of the almost eighty fora of the convention enjoyed the power accorded to primary jurisdictions, the unscrupulous arbitration loser could quickly abandon the neutral forum upon which both parties had agreed and seek a favorably inclined jurisdiction."). Rather, the New York Convention has entrusted the primary jurisdiction with the exclusive role of overturning or modifying an arbitral award because it is the jurisdiction specifically selected by the parties. *See also Gulf Petro Trading Co.*, 512 F.3d at 753 (citing *M & C Corp. v. Erwin Behr GMBH & Co., KG*, 87 F.3d 844, 849 (6th Cir. 1996)) ("[T]he role assigned to courts of secondary jurisdiction is a limited one. It is undisputed that the Convention precludes a court of secondary jurisdiction from vacating, setting aside, or modifying a foreign arbitral award. And given the particular interests at stake in arbitration, it is not surprising that this limitation has been implemented in the form of a jurisdictional bar . . . thereby encouraging finality and limiting costs.").[5]

---

[5] Plaintiffs cite *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357 (5th Cir. 2003) to incorrectly suggest that the New York Convention envisions multiple judicial proceedings challenging a final arbitral award. Not so. The New York Convention does allow for multiple judicial proceedings (*e.g.*, multiple confirmation proceedings, or an annulment proceeding in the primary jurisdiction and confirmation proceedings in one or more secondary jurisdictions), but it does not permit a secondary-jurisdiction court to usurp the exclusive jurisdiction of a primary-jurisdiction court with respect to any challenges to a final arbitral award.

## II.      THE COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANTS

### A.      Plaintiffs Failed to Establish Specific Jurisdiction

As explained in the MTD, this Court does not have general personal jurisdiction over either Defendant.  MTD at 13-14.  Plaintiffs do not contest, and thus concede, that there is no general jurisdiction here.

This Court also lacks specific jurisdiction because Plaintiffs have not alleged a sufficient causal nexus between Defendants' alleged contacts with the District and the claims at issue. MTD at 15-16.  Plaintiffs' response on this issue is relegated to a footnote, where Plaintiffs contend that Hisense's sales of Sharp-branded products to U.S. consumers throughout the U.S. gave rise to the arbitration in Singapore and therefore satisfy the requirements for specific jurisdiction.  Pls.' Resp. at 18, n. 18.  In support of this, Plaintiffs cite two inapposite out-of-district trademark and patent infringement cases to argue that there is a connection between Defendants' alleged television sales in the District and this dispute.  *Id.* (citing *Hilsinger Co. v. FBW Invs., LLC,* 109 F. Supp. 3d 409 (D. Mass. 2015) (alleging trademark infringement by products sold in the district); *Fusionbrands, Inc. v. Suburban Bowery of Suffern, Inc.*, 2013 U.S. Dist. LEXIS 138138 (N.D. Ga. Sept. 26, 2013) (alleging products sold in the district infringed plaintiffs' patents and trademarks)).  Both cases cited by Plaintiffs, however, alleged that the products sold in the relevant forum infringed upon trademarks or patents that were at issue in the litigation, a direct relationship that is plainly missing here, where the alleged sale of televisions is not sufficiently related to Plaintiffs' attempt to challenge a foreign arbitration award as violating their rights to free speech.  *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (confining specific jurisdiction to "adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction").

9

In the alternative, Plaintiffs argue that Hisense's filings with the FCC—filings submitted by other Hisense entities not parties to this action—are enough to establish personal jurisdiction against both Hisense International and Hisense USA.  Pls.' Resp. at 19-20.  However, Hisense's alleged contacts with the FCC are not sufficient to establish specific jurisdiction.  Any regulatory submissions made in the ordinary course by unidentified Hisense entities are not sufficiently related to the relief obtained in the Emergency Order from a SIAC arbitrator, which Sharp now seeks to challenge on public policy grounds.  *Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 13, 27 (D.D.C. 2014) ("For the purpose of the D.C. long-arm statute . . . the claim raised must 'have a discernible relationship' to the defendant's business transacted in the district.").

In any event, a nonresident making filings to a government agency in the District is not a basis for personal jurisdiction.  The case cited by Plaintiffs, *Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp*., 35 A.3d 1127 (D.C. Cir. 2012), makes this clear.  In *Companhia Brasileira*, the court recognized under the "government contacts" doctrine that "entry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies" is not a basis for the assertion of *in personam* jurisdiction.[6]  *Id*. at 1131; *see also App Dynamic ehf v. Vignisson*, 87 F. Supp. 3d 322, 324-35 (D.D.C. 2015) (finding no personal jurisdiction in the District because the "government contacts" doctrine applied to filings with the U.S. Copyright Office); *Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 811 (D.C. 1976) (en banc) (refraining from exercising personal jurisdiction based on contacts with the federal government in the district).  Accordingly, Hisense's contacts with the FCC, as alleged, are not sufficient to establish personal jurisdiction over either Defendant.

---

[6] While the court recognized a very limited exception to this doctrine where individuals fraudulently petition the government, there are no allegations to support the application of the exception here.

### B.        Hisense International Can Assert a Personal Jurisdiction Defense

Plaintiffs also contend that Hisense International cannot assert a personal jurisdiction defense because it is a subsidiary of Hisense Co. Ltd., a Chinese state-owned entity, and therefore Hisense International is not a person under the Fifth Amendment and has no right to assert a personal jurisdiction defense.  Pls.' Resp. at 20-21.

There is no support for the proposition that a state-owned corporation has no right to assert a personal jurisdiction defense (much less a subsidiary of a state-owned corporation).  The only case cited by Plaintiffs makes clear that only "an actual foreign government" is restricted in asserting a personal jurisdiction defense.  *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 99-100 (D.C. Cir. 2002).[7]  The D.C. Circuit has expressly declined to express any view "as to whether other entities that fall within the FSIA's definition of 'foreign state' including corporations in which a foreign state owns a majority interest could yet be considered persons under the Due Process Clause."  *Id.* (citation omitted).  The application of *Price* to only foreign states was re-affirmed by the D.C. Circuit as recently as March of this year.  *See Livnat v. Palestinian Auth.*, 851 F.3d 45, 49 (D.C. Cir. 2017) (allowing personal jurisdiction arguments to be made by entity functioning as a foreign government and confirming a narrow interpretation of *Price* that puts "foreign sovereigns in a separate constitutional category from 'private entities,'" noting that *Price* "applies only to sovereign foreign states").[8]

---

[7] Plaintiffs also cite to 28 U.S.C. §1603, but that relates to the Foreign Sovereign Immunities Act, which is not implicated here.

[8] Plaintiffs also do not actually allege that Hisense International is a state-owned entity or instrumentality.  While Plaintiffs assert that Hisense Co., Ltd. is state-owned, Hisense International is a separate and independent legal entity and is not "state controlled" simply because it may be a subsidiary of Hisense Co., Ltd.  *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 480 (2003) (holding that a corporate subsidiary is not an instrumentality of a foreign state under the FSIA because it is not directly state-owned).

AMERICAS 93666700

III.    **THE COMPLAINT IS LEGALLY DEFICIENT**

A.    **Plaintiffs' Request to Vacate the Emergency Order Is Time Barred**

Plaintiffs do not dispute that the Federal Arbitration Act's ("FAA") three-month statute of limitations applies to actions to vacate or modify an arbitration award under the New York Convention, but contend that it does not apply to their action challenging the "enforceability" of the Emergency Order.  Pls.' Resp. at 25.  As discussed above, regardless of the words Plaintiffs use, the substantive result is the same: Plaintiffs seek to modify the Emergency Order by vacating Paragraph 135(iii), exactly the type of proceeding to which the three-month statute of limitation applies.  MTD at 16-17.

Even if Plaintiffs contend that the relief they seek arises under the New York Convention, the FAA's three-month statute of limitations still applies via the New York Convention's residual clause.  *Gonsalvez v. Celebrity Cruises, Inc.*, 935 F. Supp. 2d 1325, 1331 (S.D. Fla. 2013) (applying the FAA's three-month statute of limitation to an action seeking to vacate); *P.M.I. Trading Ltd. v. Farstad Oil, Inc.*, 2001 U.S. Dist. LEXIS 227 at *5 n.2 (S.D.N.Y. Jan. 16, 2001) ("Under § 12 of the FAA (which applies in this respect since it is not in conflict with the Convention), a motion to vacate must made within 'three months after the award is filed or delivered.'").  Thus, Plaintiffs application is untimely no matter how it is characterized.

Plaintiffs' request that this Court interpret the three-month statute of limitations narrowly does nothing to salvage Plaintiffs' claims.  There is no ambiguity—the terms of the statute of limitations apply squarely to the relief Plaintiffs seek.  Plaintiffs' suggestion that a statute of limitations does not apply to injunctive relief actions also has no support in the law, and would undercut the specific language of the FAA, which sets a strict time limit for challenging a final arbitral award.  There is also no equitable basis to disregard the strict time limitation Congress

imposed to ensure finality of arbitration awards.  Sharp delayed for months before seeking to challenge the Emergency Order in this Court, while in the interim filing multiple lawsuits in California and New York attacking the jurisdiction of the arbitration, and seeking to have the Emergency Order vacated in the arbitration.[9]

### B. Plaintiffs Have Not Alleged a Cognizable First Amendment Claim to Support a Public Policy Challenge to the Emergency Order Under the New York Convention

Plaintiffs seek a declaration, under Article V(2)(b) of the New York Convention, that the Emergency Order is unenforceable as contrary to U.S. public policy because it violates the First Amendment.  Pls.' Resp. at 26.[10]  Putting aside the jurisdictional and procedural infirmities in this action, Plaintiffs have not and cannot allege a violation of the First Amendment because the requisite state action is absent.  MTD at 17-19.

In response, Plaintiffs do not dispute that state action is a necessary prerequisite to establish a First Amendment violation, but contend that a judicial order enforcing the Emergency Order qualifies as state action.  Pls.' Resp. at 30.  Plaintiffs are incorrect.  Enforcement of the non-disparagement provisions of the Emergency Order would *not* qualify as state action merely because a court would be asked to determine whether there has been a violation of the Order.  Courts routinely enforce all aspects of arbitration awards, including equitable or injunctive relief, and that does not somehow constitute state action.  *See Davis v. Prudential Sec., Inc.*, 59 F.3d

---

[9] Plaintiffs also assert that they needed time to retain counsel and assess the issues before bringing this action. Pls.' Resp. at 36.  That is never an acceptable basis to exceed a statute of limitations.

[10] Plaintiffs seek to downplay the standard for an alleged public policy violation under the New York Convention, but as the D.C. Circuit has made clear, the public policy defense is seldomly invoked and only applies "'where enforcement would violate the forum state's most basic notions of morality and justice'". *Belize Soc. Dev. Ltd.*, 5 F. Supp. 3d at 43 (quoting *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 938 (D.C. Cir. 2007)).

AMERICAS 93666700

1186, 1192 (11th Cir. 1995) ("[M]ere confirmation of a private arbitration award by a district court is insufficient state action to trigger the application of the Due Process Clause."); *United States v. Am. Soc'y of Composers, Authors and Publishers*, 708 F. Supp. 95, 96-97 (S.D.N.Y. 1989) (mere court approval of arbitration is not state action).

Plaintiffs cite *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) in support, but that case recognized that there is no state action when a court merely "approv[es] or acquiesce[s] in the initiatives of a private party." *Id*. at 1004-05.  Plaintiffs' reliance on *Shelly v. Kraemer*, 334 U.S. 1 (1948), is also misplaced.  The Court in *Shelly* held that there was state action where "the States have made available . . . the full coercive power of government to deny to petitioners, on the grounds of race or color, the enjoyment of property rights." *Id*. at 19.[11]  Enforcement of obligations arising out of a private agreement to arbitrate under particular rules bargained and agreed to by two sophisticated private parties does not constitute state action for purposes of a First Amendment claim.  *See Everett v. Paul Davis Restoration, Inc.*, 771 F.3d 380, 386-87 (7th Cir. 2014) (holding plaintiff to the obligations under an arbitration agreement where it was negotiated between two highly sophisticated private parties that agreed upon the very structure of the arbitration and arbitration panel that plaintiff challenged).[12]

The Emergency Order is a product of the parties' *agreement*, not some state action. Sharp *agreed* to arbitrate its disputes before SIAC.  Sharp also *agreed* to the SIAC rules that

---

[11] *Shelly* also involved a racially restrictive covenant, and its holding has been limited to the context of racial discrimination which is not at issue here.  *United States v. Wiseman*, 445 F.2d 792, 795 n.3 (2d Cir. 1971).

[12] Plaintiffs seek to dismiss as "irrelevant" analogous cases enforcing private non-disparagement agreements.  Pls.' Resp. at 31.  But that would ignore the very nature of arbitration, which is a product of parties' bargained-for agreement.  Indeed, the principal reason why enforcement of an arbitral award does not qualify as state action is because it is a product of parties' private agreement.  MTD at 17-18.

provide for confidentiality of "all matters relating to the proceedings," (SIAC Rule 39), and that give an Emergency Arbitrator "the power to order or award *any* interim relief that he deems necessary." (SIAC Rules, Schedule 1, ¶ 8) (emphasis added). The result of that *agreement* is the Emergency Order. Sharp, a sophisticated party, is free to *agree* to limit its "speech rights" any way it wants to and that is effectively what it has done here by submitting to a confidential arbitration proceeding that gives an Emergency Arbitrator broad discretion.[13] Sharp cannot now be permitted to convert its own private, commercial agreement into a state sponsored restriction on its free speech. Moreover, as Sharp's public statements and litigation tactics evidence, the Emergency Order is both reasonable and necessary to protect Hisense International's rights under the TLA during the pendency of the arbitration.[14]

As Plaintiffs acknowledge, they have not identified a single analogous foreign arbitration award not enforced on public policy grounds for violation of the First Amendment. Pls.' Resp. at 27-28. Instead, Plaintiffs rely exclusively on non-arbitration cases, including the same three English money-judgment libel cases cited for the same proposition in the Motion for Preliminary

---

[13] It is worth remembering that the parties expressly incorporated the SIAC Rules into the TLA. Dkt. No. 23, Ex. A, ¶ 28.1.

[14] Plaintiffs want this Court to believe that the Emergency Order is causing them irreparable harm—both to their free speech rights and brand—and that this action is meant to remedy such supposed harm. Pls.' Resp. at 34-35. But Sharp's true motive is apparent from its Response to the MTD, which all but admits that Sharp seeks to thwart Hisense International's ability to meet required sales targets so it can terminate the TLA on such grounds. *See* Pls.' Resp. at 8-9. To that end, Sharp has already targeted the consumer public. The action pending in the Northern District of California paved the way for negative press against Hisense, as Sharp made reckless allegations of "shoddy" manufacturing of Sharp-branded televisions. ███████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████ In other words, Sharp is manufacturing its own irreparable harm.

AMERICAS 93666700

Injunction.[15]   These cases are inapposite.  Opp'n to Prelim. Inj. at 20 n.9.  As Plaintiffs concede, these cases do not involve the enforcement of an arbitration award, do not arise under the New York Convention, and in none of the cases was a foreign award deemed unenforceable under the limited public policy exception in the New York Convention.  Plaintiffs nonetheless contend, without any support or citation, that "[r]egardless of whether they come from a foreign arbitrator or a foreign court, these orders violate U.S. public policy and are thus [un]enforceable."  Pls.' Resp. at 27 (error in original).  This is simply wrong.  The mutually agreed-upon private nature of arbitrations differentiates arbitrations in a fundamental way from foreign court judgments enforcing that country's laws, which explains why enforcement of arbitral orders are governed under different conventions and standards from the enforcement of foreign court judgments.

　　　As a fallback, Plaintiffs argue that even if there is no violation of the First Amendment, the Emergency Order is still unenforceable because it "undermines the FCC's authority and ability to carry out its mission."  Pls.' Resp. at 26.  This is a red herring.  The Emergency Order does not purport to limit or restrict the FCC.  Plaintiffs' assertion that the Emergency Order frustrates the FCC's exclusive jurisdiction to regulate and enforce EMI standards in the U.S. is simply wrong.  Pls.' Resp. at 28-29.  The Emergency Order is narrowly drawn to preclude Sharp from disrupting Hisense International's business, and does not infringe on the jurisdiction or authority of the FCC in any way.  Moreover, as Plaintiffs acknowledge, the Emergency Order expressly carves out communications with regulators that are required by law.

---

[15] *See* Pls.' Resp. at 26-27 (citing *S.A.R.L. Louis Feraud Int'l v. Viewfinder, Inc.*, 489 F.3d 474 (2d Cir. 2007) (seeking enforcement of French foreign (non-arbitration) judgments); *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199 (9th Cir. 2006) (same); *Telnikoff v. Matusevitch*, 702 A.2d 230 (Md. 1997) (UK libel judgment); *Matusevitch v. Telnikoff*, 877 F. Supp. 1 (D.D.C. 1995) (same); *Bachchan v. India Abroad Publ'ns, Inc.*, 585 N.Y.S.2d 661 (Sup. Ct. N.Y. Cty. 1992)) (same).

AMERICAS 93666700

### C.      Plaintiffs Fail to State a Claim against Hisense USA

As described in the Motion to Dismiss, Hisense USA is not a proper party to this litigation because it is not a party to the underlying TLA, the pending arbitration, or the Emergency Order.  MTD at 21.

Plaintiffs do not dispute any of this, but nonetheless assert that Hisense USA is a proper party because it is a sub-licensee under the TLA and "has a separate but related interest to the issue subject to the declaratory action."  Pls.' Resp. at 22-23.  Plaintiffs' arguments are specious.

Plaintiffs seek to challenge the Emergency Order and do not assert any claims under the TLA.  Plaintiffs would not have standing to assert claims against Hisense USA under the TLA in any event because Hisense USA is not a party to that agreement.  *See Guttenberg v. Emery*, 41 F. Supp. 3d 61, 68 (D.D.C. 2014) (dismissing contract-based claims against a nonparty to that contract, stating "'[i]t goes without saying that a contract cannot bind a nonparty,' but plaintiffs apparently need this Court to say so" (citation omitted)); *see also Charlton v. Mond*, 987 A.2d 436, 441 (D.C. 2010) ("Non-parties owe no contractual duty to the contracting parties.").

Plaintiffs' argument that Hisense USA has an interest in this dispute and therefore is properly named as a defendant is likewise without merit.  It simply does not follow that because a third party may have some tangential interest in a dispute that this somehow provides a basis to name a party as a defendant.  The cases Plaintiffs rely on are readily distinguishable; the named defendants in those cases each had a direct property, monetary, or other contractual interest at stake and were a properly-named party for such reasons.  *See, e.g.*, *RFF Family P'ship, LP v. Link Dev., LLC*, 940 F. Supp. 2d 131 (D. Mass. 2012) (a mortgage interest on property); *Essex Ins. Co. v. Kasten Railcar Servs, Inc.*, 129 F.3d 947 (7th Cir. 1997) (insurance claim); *Am. Optical Co. v. Curtiss*, 59 F.R.D. 644 (S.D.N.Y. 1973) (part-ownership in patent).  Here, there is

17

no such related property interest at stake.   Hisense USA is not a party to the TLA, nor a party to the Emergency Order challenged through this action.

## IV.     ALTERNATIVELY, THIS COURT SHOULD STAY THE PROCEEDINGS IN FAVOR OF THE APPLICATION TO VACATE FILED WITH THE ARBITRAL TRIBUNAL

In the event this action is not dismissed, a stay is warranted because Sharp is seeking the same relief in the arbitration and a temporary stay would serve judicial economy, avoid duplicative effort, and lessen the risk of inconsistent decisions.  MTD at 22-23.

In opposing any stay, Plaintiffs suggest that the arbitral tribunal is somehow not equipped to address Plaintiffs' arguments regarding how the Emergency Order violates U.S. public policy or their First Amendment rights.  This argument has no merit.  The SIAC is one of the world's premier arbitral institutions and Sharp expressly agreed to this arbitral forum for the resolution of disputes under U.S. (specifically, New York) law.  Moreover, the arbitrators reviewing Sharp's Application to Vacate are all eminently experienced, U.S.-qualified lawyers that are more than capable of adjudicating Sharp's challenges to the Emergency Order.

Nor is there any merit to Plaintiffs' alleged concerns about delay.  The Emergency Order was rendered on May 9, 2017.  Plaintiffs waited more than three months to commence this action.  Considering this self-imposed delay, Plaintiffs cannot credibly argue any real prejudice from a short stay while the arbitral tribunal holds a hearing on Sharp's Application to Vacate in December and issues a decision shortly thereafter.  In any event, any purported prejudice would be outweighed by the judicial economy and efficiencies that would be served by a stay.

## CONCLUSION

For the reasons stated above, this Court should dismiss Plaintiffs' Complaint with prejudice or, in the alternative, stay the action.

AMERICAS 93666700

Dated:  October 20, 2017               WHITE & CASE LLP

                                       By:     */s/ Francis A. Vasquez, Jr.*
                                                   Francis A. Vasquez, Jr.

                                       Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
                                       WHITE & CASE LLP
                                       701 Thirteenth Street, N.W.
                                       Washington D.C., 20005
                                       Telephone: (202) 626-3600
                                       Email: fvasquez@whitecase.com

                                       David G. Hille (*Pro Hac Vice*)
                                       Gregory M. Starner (*Pro Hac Vice*)
                                       WHITE & CASE LLP
                                       1221 Avenue of the Americas
                                       New York, NY 10020
                                       Telephone: (212) 819-8200
                                       Email: dhille@whitecase.com
                                       Email: gstarner@whitecase.com

AMERICAS 93666700